IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLIE ANNE PENIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-16-937-F ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant.[1] | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Leslie Anne Penin, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB). This matter has been referred by United States District Judge Stephen P. Friot for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has filed the Administrative Record (AR), and both parties have briefed their respective positions.[2] For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

### I. Procedural Background

On January 26, 2015, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff was not disabled and, therefore not entitled to DIB. AR 18-29. The Appeals Council denied Plaintiff's request for review. AR 8-11. Therefore, the ALJ's decision constitutes the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

---

[1] Nancy A. Berryhill is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' submissions reference the Court's ECF pagination.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff met the insured requirements of the Social Security Act through March 31, 2015 and had not had not engaged in substantial gainful activity since her alleged onset date, July 27, 2010. AR 20.[3]

At step two, the ALJ determined that Plaintiff suffers from the following impairments which, in combination, are severe: degenerative disc disease; osteoarthritis; affective disorder; anxiety-related disorder; personality disorder; and substance addiction disorders. AR 21. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 21-22.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she could perform less than the full range of light work.[4] Specifically, the ALJ found Plaintiff can only do the following:

> [O]ccasionally lift and/or carry (including upward pulling) 20 pounds; can frequently lift and/or carry (including upward pulling) 10 pounds; can stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; can sit (with normal breaks) for a total of [6] hours in an [8]-hour workday; the claimant's ability to push and/or pull (including operation of hand and/or foot controls) is unlimited, other than shown above for lift and/or carry; the claimant can occasionally stoop, crouch, and climb ramps/stairs; the claimant can frequently handle bilaterally; the claimant can frequently finger bilaterally; the claimant must avoid concentrated exposure to extreme cold, vibration and hazards such as unprotected heights and dangerous, moving machinery; the claimant has no other physical impairments or

---

[3] The ALJ notes in his decision that Plaintiff has filed four prior applications for DIB. Each application was denied at the initial stage of review and Plaintiff did not appeal any of those denials. AR 18. The ALJ expressly found "no cause to reopen any prior determination on any prior application." *Id*.

[4] *See* 20 C.F.R. § 404.1567(b) (setting forth requirements for light work).

restrictions of any kind whatsoever; the claimant can perform simple and some complex tasks; the claimant can relate to supervisors and co-workers on a superficial work basis; the claimant can adapt to a work situation; but the claimant cannot relate to the general public.

AR 23.

The ALJ bypassed step four of the sequential evaluation process. AR 27. At step five, considering Plaintiff's age, education, work experience and RFC, and relying on the testimony of the vocational expert (VE), the ALJ determined other jobs exist that Plaintiff can perform and those jobs exist in significant numbers in the national economy. AR 27-28. Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act for the time period under review. AR 28-29.

### III. Claims Presented for Judicial Review

Plaintiff brings the following claims for judicial review: (1) the ALJ did not properly evaluate the medical source evidence; (2) the ALJ erred by relying on medical evidence unrelated to the period under review; and (3) the ALJ failed to perform a proper credibility analysis. It is recommended that the Commissioner's decision be reversed and the matter remanded based on Plaintiff's first claim of error.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270

(10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. **Analysis**

A. **The ALJ's Discussion of Medical and Other Source Evidence**

Plaintiff claims the ALJ erred by failing to address the weight given to nine of her treating medical sources. She also claims the ALJ erred in giving "little weight" to the opinion of an "other source" provider, Barbara Langthorn, P.A., and did not sufficiently weigh the opinion as required by established agency regulations and law. Plaintiff further claims the ALJ failed to properly address the opinion evidence of Jerry D. White, Ph.D., a consultative examiner.

In response, the Commissioner contends that the opinions of the nonexamining state agency consultants – to which the ALJ afforded "great weight" – are supported by "favorable medical findings." *See* Def.'s Brf. at p. 4. The Commissioner then proceeds to offer a series of impermissible post-hoc rationales to justify the ALJ's sparse discussion of the medical evidence. *See id*. at pp. 6-14.[5] The Commissioner fails to squarely address the error raised by Plaintiff's

---

[5] "[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). To do so would "usurp essential functions committed in the first instance to the administrative process." *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (citation omitted).

4

claim – whether, "based solely on the reasons stated in the decision," the ALJ properly addressed the medical source evidence. *Robinson*, 366 F.3d at 1084.

### 1. Governing Law

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). An ALJ must evaluate every medical opinion in the record, although the weight given to the opinion varies according to the relationship between the claimant and the medical professional. *Id*.; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Robinson*, 366 F.3d at 1084 (internal quotation marks and citations omitted). A treating physician's opinion is entitled to such weight due to the unique perspective afforded in the treating relationship "that cannot be obtained from the objective medical findings alone." *Id*. As a general matter, the greatest weight is given to the treating physician's opinion with less to the examining physician and even less to an agency physician. *Id*.

In addition to discussing the evidence supporting his decision, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) The ALJ must not pick and choose among the medical evidence, using portions of evidence favorable to his position while ignoring other evidence. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

### 2. The Opinions of the Nonexamining State Agency Consultants

The ALJ expressly gave "great weight" to the "opinions of the experts who prepared the State Agency (DDS) reports." AR 25. The ALJ referenced the following opinions regarding Plaintiff's physical limitations: Dr. Luther Woodcock, Dr. Colleen Ryan and a doctor with the initials "LMW." AR 25.[6] Dr. Woodcock opined Plaintiff could perform work at the medium exertional level. AR 439-446. Drs. Ryan and LMW opined that Plaintiff could perform work at the light exertional level – consistent with the ALJ's RFC determination. AR 117-19, 133-34.

With respect to Plaintiff's mental limitations, the ALJ referenced the following opinions: Dr. Sally Varghese and "SKT, Ph.D." AR 22-23. Dr. Varghese opined that Plaintiff could perform simple and some complex tasks; relate to others superficially; and adapt to a work situation. AR 121. Dr. SKT's findings mirror those of Dr. Varghese, but include an additional restriction that Plaintiff cannot relate to the general public. AR 136. The ALJ adopted the same mental limitations in the RFC as set forth in Dr. SKT's opinion. AR 23.

### 3. Medical and Other Source Opinion Evidence – Physical Impairments

Plaintiff contends the ALJ erred because he did not state the weight given to medical and other source opinion evidence regarding Plaintiff's physical limitations. Initially, Plaintiff contends the ALJ failed to address the weight given to the opinion of Scott de la Garza, M.D., whom Plaintiff identifies as a treating orthopedist.

The ALJ summarized the medical evidence from Dr. Garza as follows:

---

[6] As part of her claim that the ALJ improperly weighed the medical evidence, Plaintiff claims the ALJ erred in relying on opinions of the nonexamining state agency consultants identified only by initials. *See* Pl.'s Brf. at pp. 5-6. Because the Court recommends a remand on other grounds related to the ALJ's failure to properly weigh the medical evidence, the Court deems it unnecessary to address this additional claim of error.

> In November 2013, the claimant presented to Oklahoma Sport and Orthopedics. Scott de [la] Garza, M.D., an examining physician, noted that imaging studies show 'horrible spondylolisthesis with stenosis above what was an instrumented fusion with some instability.' Dr. Garza suggested a low back support brace and other modalities and thinks it is a surgical issue.

AR 25. The ALJ's opinion includes no other reference to Dr. Garza's treatment records. He did not discuss the treatment records in relation to other medical evidence of record and, therefore, rendered no opinion as to whether the treatment records were consistent or inconsistent with other objective medical evidence of record. Nor, as Plaintiff contends, did the ALJ identify the weight given to Dr. Garza's opinion.

Dr. Garza's opinion that Plaintiff needed a low back support brace, other modalities, and that she may be a candidate for further surgery due to her spondylolisthesis and stenosis is based on objective medical evidence and supported by "medically acceptable clinical and laboratory diagnostic techniques." *See* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 at *2 (July 2, 1996).[7]

The ALJ's terse summary of Dr. Garza's treatment notes, without any consideration of the factors relevant to weighing medical source opinions, constitutes reversible error. *Cf. Cagle v. Astrue*, 266 F. App'x 788, 792-93 (10th Cir. 2008) (ALJ's terse explanation for giving "little probative weight" to treating physician opinion due to "troubling inconsistencies" in medical records was legally insufficient; remand was required so that ALJ could consider factors for weighing treating source opinions set forth in 20 C.F.R. § 404.1527(d)).[8]

---

[7] Dr. Garza's findings are based upon an MRI and his own examination and evaluation of Plaintiff. AR 514-15.

[8] Plaintiff references these factors as the *Goatcher* factors, which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the

7

Moreover, Dr. Garza's opinion supports the opinion of Barbara Langthorn, PA-C. Ms. Langthorn is a physician's assistant. Her opinion, therefore, is an "other source" opinion. *See* 20 C.F.R. §§ 404.1502; 1513(d)(1); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2009) at *2. Evidence from other sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2. The factors for weighing opinions of acceptable medical sources set forth in 20 C.F.R. § 404.1527(d) apply equally to other source opinions. *Id.* at *4. As such, an ALJ must explain the weight given to other source opinions in a way sufficient to allow a "subsequent reviewer to follow the [ALJ's] reasoning." *Id*. at *6.

Ms. Langthorn provided the following opinion regarding Plaintiff's functional limitations based on her "history of back injury and surgical repair": "[s]he continues to have pain, which makes her unable to walk a long distance without the aid of a cane, or to stand for a prolonged period of time. Sitting for any length of time worsens the pain." AR 531.

The ALJ rejected Ms. Langthorn's opinion, stating that he gave it "very little weight." AR 26. In support, the ALJ stated:

> Her opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques. Her opinion is also inconsistent with the other substantial evidence in the claimant's case record. Finally, her opinion is contradicted by three

---

consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).
  The record includes a single examination by Dr. Garza. The Commissioner, however, does not contest Plaintiff's identification of Dr. Garza as a treating physician. Nonetheless, even if Dr. Garza does not qualify as a treating physician, the ALJ was still required to consider his opinion, weigh that opinion using the applicable regulatory factors, and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527; *see also Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015).

physicians who are acceptable medical sources, i.e. Dr. Woodcock, Dr. LMW, and Dr. Ryan.

AR 26.

The ALJ's decision is problematic. He does not explain how or why Ms. Langthorn's opinion is "not well supported by medically acceptable clinical and laboratory diagnostic techniques." Nor does the ALJ identify the other substantial evidence that is inconsistent with Ms. Langthorn's opinion.

Additionally, the ALJ's finding that Ms. Langthorn's opinion is "contradicted" by the consultative examiners' opinions is not supported by substantial evidence. First, with respect to Dr. Woodcock, the ALJ previously rejected his opinion, acknowledging that the opinion was made without consideration of all of the evidence. The ALJ stated that he found "Dr. Woodcock['s] medical opinion, *at the time he offered it*, was entitled to great weight." AR 25 (emphasis added).[9] But the ALJ then qualified his reliance on Dr. Woodcock's opinion as follows: "after Dr. Woodcock gave his opinion additional evidence that he did not have the opportunity to consider shows that the claimant later became limited to the physical residual functional capacity found above by the undersigned." *Id*.

Second, the ALJ found the opinions of Dr. Ryan and Dr. LMW were entitled to great weight "because they are well supported by the evidence of record." AR 26. But, once again, the ALJ did not identify the evidence supporting this finding. *Cf. Malakowsky v. Barnhart*, 66 F.

---

[9] Contrary to Plaintiff's assertion, the fact that the ALJ reviewed Dr. Woodcock's opinion from his most recent prior application does not amount to de facto reopening of the prior decision. *See Hamlin*, 365 F.3d at 1215 n. 8 (review of medical reports from previously adjudicated period is relevant to claimant's medical history and does not implicitly reopen earlier claim); *McLeroy v. Barnhart*, No. 05-1353-WEB, 2006 WL 4046154 at *7 (D. Kan. Oct. 31, 2006) (unpublished op.) (where ALJ clearly declined to reopen previous adjudication, examination of medical evidence from earlier adjudicated period did not reopen earlier claim).

App'x 756, 757-58 (10th Cir. 2003) (substantial evidence did not support ALJ's decision where he failed to provide any explanation for rejecting medical evidence or link his findings to specific evidence and meaningful judicial review of the Commissioner's decision could not be made).

Third, while the ALJ found Ms. Langthorn's opinion inconsistent with the opinions of Dr. LMW and Dr. Ryan, the ALJ wholly failed to weigh other medical evidence not inconsistent with her opinion. As discussed above, the ALJ did not properly weigh the opinion of Dr. Garza. Moreover, the ALJ did not properly weigh the opinion of the consultative examiner, Gabriel Wade, M.D. The ALJ only addressed a single finding in Dr. Wade's treatment records – an observation by Dr. Wade that Plaintiff "walked with an unstable gait but did not use an assistive device." AR 24 (*citing* AR 461-467). But the ALJ omitted critical findings by Dr. Wade. For example, with respect to Plaintiff's unstable gait, Dr. Wade's examination notes state in full: "The pt ambulates in an unstable gait at a slow speed without the use of any assistive device *but can walk when leaning on objects or people for stability. Her right leg is obviously very weak when watching her ambulate.*" AR 463 (emphasis added). The ALJ ignored Dr. Wade's additional observations regarding her gait and right-leg weakness.

Other notable findings by Dr. Wade and not addressed by the ALJ include the following:

- there is decreased sensation noted in the entire right leg and right arm when compared to the left
- [t]here is palpatory tenderness noted from L4 to S1
- SLR testing is positive on the right side in the seated and supine positions

AR 462, 463.

Dr. Wade's findings are consistent with the limitations found by Ms. Langthorn and with the opinion of Dr. Garza. But again, the ALJ did not address the weight given to Dr. Wade's findings. The ALJ's failure to discuss the significantly probative evidence from Dr. Wade or

address the weight given to it constitutes reversible error. *Cf. Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ committed reversible legal error where he "ignored evidence from [opinion of an "other source" provider] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *see also Larkins ex rel. M.D. v. Colvin*, 568 F. App'x 646, 649 (10th Cir. 2014) ("Without ALJ findings supported by specific weighing of the evidence, we cannot determine whether the ALJ's decision is supported by substantial evidence or whether she applied correct legal standards in denying benefits.").

Indeed, the ALJ's overall failure to explain why he rejected certain evidence regarding Plaintiff's physical limitations precludes meaningful judicial review of the Commissioner's decision. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination.").[10] The ALJ's limited discussion of the evidence, his failure to weigh evidence and make findings required by agency regulations and governing law, and his selective view of the record requires a remand.

### 4. Medical Opinion Evidence – Mental Limitations

Plaintiff also claims the ALJ erred by giving "little weight" to the opinion of Jerry D. White, Ph.D., a consultative examining psychologist, regarding Plaintiff's mental limitations. AR

---

[10] Because a remand is required due to the ALJ's errors associated with the opinion of Ms. Langthorn and the medical evidence favorable to Plaintiff found in the medical records of both Dr. Garza and Dr. Wade, the Court finds it unnecessary to address the other treatment records the ALJ failed to address in his decision upon which Plaintiff bases her claim of error. On remand, however, the ALJ is reminded that the governing regulations require consideration of all medical opinion evidence and a failure to consider such evidence, where significantly probative, constitutes clear error. *See Victory v. Barnhart*, 121 F. App'x 819, 825 (10th Cir. 2005) (*citing* 20 C.F.R. § 404.1527(d)); *see also Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("An ALJ may not ignore the evidence and make no findings.").

25. Dr. White examined Plaintiff in January 2013. AR 470-474. Dr. White observed Plaintiff's grooming to be poor and her clothing dirty. AR 470. He found Plaintiff to be "open and honest" during the examination. *Id.*

Dr. White noted that Plaintiff's "stream of mental activity was confused and tangential" and her answers were "rambling and tangential," though Plaintiff denied "any history of either hallucinations or delusions." AR 472. Dr. White's findings include a diagnostic impression of depression, anxiety a personality disorder with borderline traits and polysubstance abuse/dependence. AR 473. Based on testing, Dr. White concluded that "Ms. Penin is functioning in the low average range of general intelligence." *Id.* Dr. White assessed a Global Assessment of Functioning (GAF) score of 45, reflecting a "[s]erious level of impairment in several areas." *Id.*[11] Finally, Dr. White found that the "prognosis of significant improvement in Ms. Leslie Penin's functioning during the coming twelve months is considered to be poor." AR 473.

The ALJ found the GAF score assigned by Dr. White should be rejected as "a mere snapshot." AR 26. The ALJ further rejected Dr. White's opinion stating: "Dr. Varghese and Dr. SKT independently examined the evidence, and the undersigned finds their opinions are more credible tha[n] the one-time opinion by Dr. White." AR 26.

Generally, the opinion of examining physicians is given more weight than the opinion of nonexamining physicians. *See* 20 C.F.R. § 404.1527(c). Thus, the ALJ's rejection of the opinion of Dr. White, an examining consultant, in favor of the opinions of Dr. Varghese and Dr. SKT, nonexamining consultants, is contrary to the governing regulations.

---

[11] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (*quoting* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34).

Exceptions to this rule exist. "In appropriate circumstances, opinions of State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," including when "the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996).

However, a review of the findings made by Dr. Varghese and Dr. SKT demonstrate that the only medical evidence supporting their opinions is the consultative examination by Dr. White. AR 116, 131-32. Thus, the circumstances identified in SSR 96-6p which might support giving greater weight to a nonexamining consultant are not present.

The only other basis offered by the ALJ for giving greater weight to the opinions of Dr. Varghese and Dr. SKT is that their opinions are more credible. But credibility is not one of the factors governing the weight to be given medical opinion evidence. *See* 20 C.F.R. § 404.1527(c) (listing factors). Indeed, in the context of a treating physician opinion, the Tenth Circuit has expressly held that "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the ALJ's rejection of the GAF score as a "mere snapshot," without further analysis, is improper. The ALJ's conclusion in the guise of a finding does not constitute substantial evidence. On the record presented, where evidence of Plaintiff's mental limitations relied upon by the ALJ derives predominantly from Dr. White's own consultative examination, the GAF score

13

constitutes additional significantly probative evidence of Plaintiff's mental limitations. *See Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th Cir. 2003) ("GAF scores of 50 or less do suggest an inability to keep a job."). The ALJ did not offer sufficient explanation for rejecting the GAF score. *Cf. Givens v. Astrue*, 251 F. App'x 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.").[12] Thus, the ALJ's "determination was too facile a rejection of the potential relevance of the GAF score in this particular instance." *Gonzales v. Colvin*, 69 F. Supp.3d 1163, 1170 (D. Colo. 2014). For all these reasons, the ALJ's findings with respect to Plaintiff's mental limitations are not supported by substantial evidence. Accordingly, a remand is required.

B. **Plaintiff's Credibility Challenge**

Plaintiff further claims the ALJ failed to conduct a proper credibility analysis. She contends the ALJ did not link his credibility findings to the record evidence and did not properly assess her activities of daily living. As set forth, it is recommended that this matter be remanded so that the ALJ may properly assess the medical evidence under the appropriate regulations and law. The ALJ's treatment of the medical evidence on remand may impact the credibility analysis. Accordingly, the Court finds it unnecessary to address this additional claim or error. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Chrismon v. Colvin*, 531 F. App'x 893,

---

[12] The Court notes, in this regard, that given the fact the only medical evidence the state agency physicians relied upon was that of Dr. White, and the ALJ effectively rejected the opinion of Dr. White by giving it "little weight," no medical evidence appears to support the ALJ's mental RFC determination. Coupled with the ALJ's apparent finding that the GAF score was "a mere snapshot" of Plaintiff's mental functional limitations, the ALJ may have had a duty to further develop the record. On remand, the ALJ is reminded of the duty to ensure a sufficient record exists upon which to base findings regarding Plaintiff's mental impairments.

902 (10th Cir. 2013) (declining to address claimant's credibility challenge where proper analysis of claimant's credibility may be affected by proceedings on remand necessitated by the ALJ's rejection of medical opinion evidence); *Armstrong v. Astrue*, 495 F. App'x 891, 894 (10th Cir. 2012) (remanding because ALJ's decision "does not weigh the evidence as required by the applicable legal standards" and finding it unnecessary to reach the plaintiff's "additional arguments that the ALJ erred in assessing her credibility and in accepting certain vocational expert testimony; those issues may be affected by the ALJ's treatment of the case on remand"). "Of course, once the ALJ has properly weighed the medical evidence, he will again need to assess [Plaintiff's] credibility, keeping in mind that 'findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Armstrong*, 495 F. App'x at 894 (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995)).

## VI. Conclusion

In sum, the ALJ's failure to explain or identify claimed inconsistencies in the record upon which his decision is based; failure to weigh medical opinion evidence; and failure to discuss significantly probative evidence and his reasons for rejecting the same, require a remand. The ALJ's errors impact both the physical and mental aspects of the RFC determination. On remand, the ALJ is reminded of his duty to consider all medical opinion evidence and to provide sufficiently detailed reasons for accepting or rejecting that evidence. The ALJ is further reminded of his duty to set forth specific evidence relied upon in evaluating Plaintiff's credibility.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by May 17, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 3rd day of May, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE